IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RUTHIE L.G., § <br> PLAINTIFF, § <br> § <br> v. § <br> § <br> COMMISSIONER OF THE SOCIAL § <br> SECURITY ADMINISTRATION, § <br> DEFENDANT. § | CASE NO. 3:22-CV-2585-BK |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636 and the parties' consent to proceed before the undersigned United States magistrate judge, Doc. 26, the Court now considers this appeal of the denial of Plaintiff's application for Social Security disability benefits. For the reasons stated here, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. *Procedural History*

Plaintiff seeks judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Doc. 1, *passim*. Plaintiff filed an application for benefits in July 2020, alleging a disability onset date of February 2019 due to ankle, knee, and hip problems, as well as depression. Doc. 17-1 at 42, 116, 268-82. Plaintiff's application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff was 49 years old on her alleged onset date, has a high school education, and had past relevant work as a loan clerk, a closing clerk, and a mortgage clerk. Doc. 17-1 at 53, 101, 327-28. In terms of her relevant medical history, Plaintiff focuses largely on evidence from April 2021 through the date of the ALJ's decision. First, she points to the findings of state agency medical consultant ("SAMC") Dr. Jeanine Kwun, M.D., who considered medical records dating from September 2020 through March 2021. Doc. 17-1 at 117-19. Dr. Kwun noted Plaintiff's history of knee arthroscopy with mild residual tenderness and diffuse swelling. Doc. 17-1 at 119. Dr. Kwun also documented that Plaintiff sprained her ankle in October 2020, and an MRI of her right hip the same month revealed moderate effusion, mild joint space loss, acetabular spurring and labral tearing/fraying, and mild arthropathy. Doc. 17-1 at 119. Dr. Kwun opined that while Plaintiff's impairments could reasonably be expected to cause pain and weakness, her limitations were not expected to last for 12 consecutive months because her symptoms were resolving. Doc. 17-1 at 121-25. In turn, Dr. Kwun predicted Plaintiff would be able to perform a restricted range of light work by December 2021. Doc. 17-1 at 121-25. On reconsideration, SAMC Dr. Scott Spoor, M.D., affirmed Dr. Kwun's assessment and it was noted that "Medical information shows that your conditions are being treated. As long as you continue to follow your doctor's orders, these conditions should remain under control." Doc. 17-1 at 140-42, 180.

In April 2021, Plaintiff sought treatment with Dr. Ajaz Khan, M.D., complaining of right knee and hip pain. Doc. 17-3 at 522. Dr. Khan observed that Plaintiff's right knee was tender and swollen four months post-surgery, she exhibited decreased strength in both lower extremities and an unsteady gait, and was using a cane. Doc. 17-3 at 522-24. In July 2021, Plaintiff was

2

seen by Dr. Steven Epping, M.D., who noted Plaintiff had some decreased mobility due to "severe osteoarthritis" in both knees and her right hip. Doc. 17-3 at 518.

At the hearing level, Plaintiff introduced records reflecting treatment by Farah Siddiqi, FNP-C, from November 2021 through January 2022. When Plaintiff established care with Nurse Practitioner Siddiqi, her diagnoses included bilateral knee pain, right hip pain, abnormal gait and mobility, chronic pain syndrome, and morbid obesity with a BMI of 63.4. Doc. 17-3 at 528-29, 531-32. Nurse Siddiqi observed that Plaintiff exhibited decreased range of motion in both knees and elbows as well as her right hip. Doc. 17-3 at 532. Nurse Siddiqi noted Plaintiff had begun using a scooter due to her abnormal gait but had declined an orthopedist's recommendation for knee and hip replacement surgery. Doc. 17-3 at 532. Nurse Siddiqi's January 2022 treatment notes reflected the same diagnoses and complaints, but she recommended that Plaintiff start exercising five days a week and resistance training three to five days a week. Doc. 17-3 at 548.

### C. The ALJ's Findings

In March 2022, the ALJ issued a decision finding that Plaintiff has the severe impairments of (1) right knee degenerative joint disease with meniscus tears post-arthroscopy and partial medial meniscectomy; (2) right hip strain; and (3) obesity. Doc. 17-1 at 45. After considering the medical evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work, including her past relevant work, and thus concluded that Plaintiff was not disabled. Doc. 17-1 at 50, 53-54.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. §

3

423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) the severity and duration of the claimant's impairments; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). Thereafter, the burden shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). The Court cannot "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

### III. ANALYSIS

Plaintiff argues the ALJ failed to properly develop the record, and based the RFC assessment on her own lay interpretation of the medical evidence instead of either obtaining a medical source statement from a treating source or ordering a consultative examination. Doc. 27 at 7-10. Plaintiff posits that the ALJ instead relied on (1) the SAMC's assessments even though they are "stale and uninformed" because the SAMCs were not aware she had starting using a

4

scooter, and (2) the ALJ's lay interpretation of Nurse Siddiqi's notes. Doc. 27 at 8-9. Plaintiff maintains that the error was prejudicial because the RFC assessment was not properly supported, and the outcome might have been different had the ALJ obtained additional medical opinion evidence. Doc. 27 at 10-11.

Defendant responds that the ALJ properly interpreted the medical evidence in determining Plaintiff's capacity to work and was not required to derive the RFC assessment directly from a medical opinion. Doc. 28 at 3-9. Defendant further asserts that substantial evidence supports the ALJ's determination that Plaintiff can perform less than sedentary work. Doc. 28 at 7-9.

The RFC is an ALJ's assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* ALJs "must be careful not to succumb to the temptation to play doctor" or make their own independent medical assessments. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quotation marks and citation omitted). While it is solely the ALJ's responsibility to determine RFC, this function is not to be confused with an ALJ substituting her own lay opinion for a medical opinion. *Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012) (per curiam) (citation omitted); *see also Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (holding that the RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence).

Here, the ALJ found "somewhat persuasive" the SAMCs' conclusion that Plaintiff would be able to perform a restricted range of light work but nevertheless reduced Plaintiff's restriction to the sedentary level given her obesity, antalgic gait, and some reports of decreased lower

5

extremity strength.  Doc. 17-1 at 53.  The ALJ further found "somewhat persuasive" Dr. Epping's opinion that Plaintiff had decreased mobility, but found that Dr. Epping's diagnosis of "severe osteoarthritis" in both Plaintiff's knees and right hip was "not well documented on imaging studies."  Doc. 17-1 at 53.  In addressing Dr. Khan's findings, the ALJ noted that while Plaintiff's right knee was tender and swollen and she had decreased range of motion in her right hip, she did not start physical therapy or pain management and refused to follow up with orthopedic surgery as recommended.  Doc. 17-1 at 52.

Additionally, the ALJ considered Nurse Siddiqi's observation that Plaintiff used a scooter to ambulate, but concluded there was "no indication of the medical necessity" for the device. Doc. 17-1 at 52; *see Webster*, 19 F.4th at 720 n.1 (rejecting the need for a consultative exam where the record revealed "the existence of" a knee brace, but the claimant did not demonstrate that it was prescribed).  Coupled with Nurse Siddiqi's recommendation that Plaintiff start an exercise program, the ALJ reasonably inferred that her treating providers believed she was capable of ambulating without an assistive device and thus did not include such in the RFC assessment.  Doc. 17-1 at 52.  Likewise, Plaintiff's contention that the SAMCs' reports were stale because they were not aware she was using a scooter falls short.  *See Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (unpublished) (per curiam) (holding that any error by ALJ in relying on "stale" SAMC reports was harmless where the ALJ acknowledged the shortcomings of the reports and incorporated additional symptoms in imposing more restrictive limitations).  Finally, the ALJ found support for her RFC determination in Plaintiff's daily activities which included preparing her own meals, driving, shopping online, managing her money, and going to doctor's appointments on her own.  Doc. 17-1 at 52.

Although the ALJ's RFC assessment imposes additional restrictions on Plaintiff's ability to work beyond the SAMCs' opinions, "it cannot be said that [the] decision was not based on substantial evidence." *See Webster*, 19 F.4th at 719. Indeed, the *Webster* court affirmed under circumstances similar to those here insofar as the ALJ had rejected the testimony of the claimant's examining physician as inconsistent and declined to adopt the SAMC's more detailed limitations verbatim. *Id.*; *see also Wills*, 2023 WL 4015174, at *4 (holding that the ALJ's RFC determination was adequately supported despite her imposition of additional restrictions beyond those noted by the SAMC). In sum, the ALJ's decision here was adequately supported by substantial evidence based on a sufficiently developed record.

Further, the ALJ was not required to either obtain a medical source statement or order a consultative examination. True, an "ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Nevertheless, "[a] consultative examination is required to develop a full and fair record only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Webster*, 19 F.4th at 720 (cleaned up) (citation omitted).

Indeed, even where the record lacks a medical source statement describing the types of work a claimant is capable of performing, the absence of such a statement does not, in itself, render the record incomplete. *Wills*, 2023 WL 4015174 at *3 (citing *Ripley*, 67 F.3d at 557). "Instead, these types of medical opinions are just one of several categories of evidence the ALJ considers in making RFC determinations." *Id.* (citing 20 C.F.R. § 404.1513). In the absence of a medical statement addressing the claimant's ability to perform work-related duties, the inquiry focuses on whether the ALJ's decision "is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

7

Here, the Court concludes that it does. The 1700-page record in the case *sub judice* is "replete with medical documents that spanned years." *Webster*, 19 F.4th at 720 (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)). The ALJ reviewed Plaintiff's records dating from early 2019 through January 2022, and considered the SAMCs' opinions, the findings of Plaintiff's treating sources, and Plaintiff's testimony in assessing Plaintiff's RFC. Nothing in the record suggests the ALJ needed additional medical information to reach an informed decision about whether Plaintiff was disabled. In short, the ALJ's decision was based upon substantial evidence in a sufficiently developed record, and the ALJ did not err in failing to obtain a medical source statement or order a consultative exam.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on February 21, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE